CHARLES F. YOUNG v. THE TOLEDO & SOUTH HAVEN RAILROAD COMPANY ET AL. (ORIGINAL BILL)

AND

THE TOLEDO & SOUTH HAVEN RAILROAD COMPANY v. CHARLES F. YOUNG (CROSS-BILL).

*Sale of uncompleted railroad—Acceptance of proposition—Notice to stockholders.*

1. A railroad may be said to be *uncompleted* which has neither station-houses, side tracks, nor turn-tables, nor rolling stock fit for use, the company having leased what it used about as long as it could, and being unable to complete its construction by furnishing what is necessary for its successful operation.

2. The acceptance, by stockholders of an *uncompleted* railroad company, owning two-thirds of its stock, of a proposition for the purchase of the road, pursuant to How. Stat. § 3403, with a direction to the directors of the company to consummate the sale without delay, pursuant to which authority the directors pass a resolution authorizing the president and secretary to make such sale and execute the proper conveyance for a consideration expressed in the resolution, pursuant to which such deed is made, shows a legal sale of such railroad.

3. In this case the complainant is held to hold his stock in the Paw Paw Railroad Company, subject to the equitable considerations growing out of the arrangement made by his vendor, as shown in the opinion, and the most that he can claim is the fair value of said stock at the time of the purchase of the Paw Paw Railroad by the Toledo & South Haven Railroad Company, which is found to be the sum of $3,500; or, in lieu thereof, he may surrender such stock to said vendee, and take its stock for an equal amount.

Appeal from Van Buren. (Mills, J.) Argued January 31, 1889. Decided October 18, 1889.

Bill filed by a stockholder to set aside the sale of a railroad, and for other relief. The Toledo & South Haven Railroad Company appeals from a decree granting the relief prayed, excepting as to the appointment of a receiver, and dismissing *its* cross-bill, etc. Decree reversed, and new one entered according to the opinion. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*John I. Breck* and *Dallas Boudeman,* for complainant.

*E. R. Annable* and *Tenny, Bashford & Tenny,* for appellant.

SHERWOOD, C. J. The complainant, as a stockholder owning 75 shares of stock in the Paw Paw Railroad Company, filed the bill in this case on the twenty-first day of January, 1887, and prayed the court to set aside the sale of the Paw Paw railroad to the Toledo & South Haven Railroad Company, made on the ninth day of September, 1886, and that the subsequent mortgage, given on the twenty-seventh day of October to the Farmers' Loan & Trust Company by the Toledo & South Haven Railroad Company, be annulled, and that the sale of the bonds secured thereby be enjoined, and that a reconveyance of the Paw Paw railroad be decreed to the company; that an accounting be had of the rents and profits accruing from the use of the Paw Paw road since the sale to the Toledo & South Haven Railroad Company on the ninth of September, 1886; and that a receiver be appointed for that purpose.

The two railroad companies were served with process. The trust company was not served, and the Toledo & South Haven Railroad Company alone appeared and made answer.

In its answer the Toledo & South Haven Company averred the validity of its purchase from the Paw Paw Railroad Company on the ninth of September, 1886, and of the bonds subsequently issued, and charged that complainant purchased his stock in bad faith, and for the purpose of compelling its purchase at an exorbitant price by the Toledo & South Haven Company.

After replication had been filed, and the cause was at issue, the several railroad companies interested were consolidated, under section 3343, How. Stat. The bonds previously issued were ratified, as were the other terms of the September purchase, and, so far as the companies could do so, both were ratified.

After the consolidation was completed, the Toledo & South Haven Company set up the consolidation proceedings as a defense, "*puis darrein continuance,*" by cross-bill, and which was subsequently brought to an issue. The testimony was taken in open court, and, upon the hearing, the circuit judge rendered a decree granting the complainant in the original bill relief substantially as asked, except as to the appointment of a receiver, and dismissed the cross-bill, without passing upon the validity of the consolidation proceedings.

The Toledo & South Haven Railroad Company appeals to this Court.

The Paw Paw Railroad Company was incorporated under the general laws of the State in 1866, and the road runs from the village of Lawton to Paw Paw. The company commenced running trains upon its road in 1867, which it continued to do until about the ninth of September, 1886. The capital stock of the company consisted of 750 shares, of $100 each.

It is claimed by complainant that the road was fully built, equipped, and completed. This, however, is denied by the defendant, in its answer; and, as to this, defendant says that the Paw Paw Railroad Company, a long time previous to

September 9, 1886, had been engaged, in good faith, in constructing its road and tracks, but had not been at that time, and never was, able to complete the construction of the same; that only the road-bed was constructed, and that very imperfectly; that it had no side tracks, no turn-tables, no station-houses, and no rolling stock; that all of those in use by it were constructed by, and belonged to, the Toledo & South Haven Railroad Company.

The Toledo & South Haven Railroad Company was organ_ ized in 1876. It extends from Lawton to South Haven, as completed,—a distance of 36 miles. It passes through Paw Paw, Lawrence, and Hartford. The road is a narrow-gauge, nine miles of which, between Paw Paw and Lawrence, was built in 1876; and in 1883 the company completed its road from Lawrence to Hartford,—a distance of six miles; and on September 9, 1886, it purchased of the Lake Michigan division of the Toledo & South Haven Railroad Company a partially completed extension between Hartford and South Haven,—a distance of sixteen miles,—and at the same date purchased the Paw Paw road, as before stated.

The Paw Paw road was at this time mortgaged for $3,000. In 1875 its stock was worth but about 40 per cent.; and in 1878 it leased its road-bed to the Toledo & South Haven Railroad Company for 8 per cent. on $30,000, or 40 per cent. of the par value of the stock.

At an early day it became very desirable for the Toledo & South Haven Railroad Company to make its connection with the Michigan Central on the east, at Lawton, and with the lake on the west, at South Haven; and on the twenty-first of June, 1884, the complainant in this case went into the employment of that company and the Paw Paw Company to aid in accomplishing that result, under the following agreement:

"The following agreement is this day entered into between F. B. Adams, president, Edwin Martin, treasurer, John Ihling, superin-

tendent, of the Paw Paw and the Toledo & South Haven Railroad Company, parties of the first part, and Charles F. Young, of Paw Paw, Michigan, party of the second part:

"The provisions of this agreement are that the party of the second part shall place, on or before September 1, 1884, one hundred and fifty thousand dollars ($150,000) of 4 per cent. 20 (or thirty) year first mortgage bonds of the Toledo & South Haven Railroad Company (both corporations to be consolidated under the one name, and title perfected); said bonds to be sold at ten per cent. discount (or 90-100 from their face value, or one hundred and thirty-five thousand dollars ($135,000) net. The proceeds from such sale of bonds shall be used as follows, to wit, viz.:

"*First.* Fifty thousand dollars ($50,000) to pay up in full the funded and compounded indebtedness of the 'Toledo & South Haven R. R. Co.'

"*Second.* Twenty thousand dollars ($20,000) to purchase the interest of parties of the first part in and to the 'Paw Paw R. R. Co.'

"*Third.* Twelve thousand dollars ($12,000)—this amount being one-half ($\frac{1}{2}$) the purchase price; balance to be paid in new stock—to apply on purchase of the Toledo & South Haven railroad.

"*Fourth.* Fifty-three thousand dollars ($53,000) to be used as a sinking fund for the completion of ten miles (or more) of new railroad to some point east of Lawton, or west of Hartford, as may be deemed to the best interest of the company hereafter. This estimate includes cost of ten miles of 'tubular rail' to be contracted for by party of second part at times of placing bonds, cost of said tubular rail not to exceed cost of standard T rail of same weight.

"Of the said $135,000 proceeds of the sale of said bonds, $90,000 shall be subject to call of said parties of the first part immediately after the issue of said bonds, duly executed and accepted; provided, that $50,000 of the said $90,000 shall be deposited with the trustee or trustees, or as may be hereafter agreed upon, for the purpose of paying up the entire funded and compounded indebtedness of the said Railroad Co. The balance of the amount ($45,000), shall be drawn upon at the rate of $5,000 per mile as new road becomes completed; such amount to be paid, on certificate of engineers in charge, to the trustee or trustees.

"Parties of the first part agree to hold in reserve, subject to the call of the company, the $32,000 arising from the sale of their undivided interests in said railroads, as a capital fund to assist, if necessary, in completing said ten miles of new railroad: *Provided,* that under no circumstances shall they individually be called upon to furnish from their private means at any one time, or during the completion of said ten miles of road, any moneys in excess of the said $32,000, and upon such amount as may be furnished from time to time, by parties of the first part, from the said $32,000, during the

building of said ten miles of road, parties of first part shall receive interest at the rate of 4 per cent. per annum; such interest to be paid from the earnings of the road; time of payment of principal to be dictated by parties of the first part.

" Immediately after the issue of the said $150,000 bonds, and the acceptance of same, and deposit of $90,000 in cash by the purchasers subject to the call of the company, as before mentioned, then there shall be issued two hundred and twenty-five thousand dollars of stock upon the thirty miles of road, and said $225,000 of stock shall be divided as follows, to wit, viz.:

" *First.* Twelve thousand dollars ($12,000) to parties of first part (as balance of purchase money before mentioned) to pay in full for Toledo & S. H. R. R.

" *Second.* Twenty-five thousand dollars ($25,000), to be held as a reserve fund by all parties to this agreement, with which to buy up all interest in the Paw Paw railroad held outside of parties of first part, and which, when bought up, shall be divided equally between all parties to the contract.

" *Third.* One hundred and eighty-eight thousand dollars ($188,000) shall be divided equally between the parties to this contract, or forty-seven thousand dollars ($47,000) each.

" And it is agreed and understood that such payments of cash and stock as are herein provided for shall cover in full all of the individual interest of said parties of the first part in and to said railroad corporation.

" In consideration of one dollar, the receipt whereof is hereby acknowledged, and the sale of said bonds being made by the party of the second part, parties of first part agree to convey and make over to the party of the second part forty-seven thousand dollars in stock, and a one-fourth (¼) interest in all the real and personal property of said railroad corporation; said stock to be issued and transfer made as soon as bonds have been accepted, and the deposit of $90,000 made as herein specified.

" It is understood and agreed upon by all parties of the contract that the failure upon the part of party of second part to place said bonds shall make this contract null and void, and parties of the first part shall be under no obligation to pay any expenses in case of failure.

" Witness our hand and seals this twenty-first day of June, eighteen hundred and eighty-four.

"F. B. ADAMS, President.          [L. S.]

"EDWIN MARTIN, Treasurer.     [L. S.]

"JOHN IHLING, Supt.              [L. S.]

"CHAS. F. YOUNG.              [L. S.] "

Under this agreement, it would appear, the consideration

the complainant was to receive for his services depended upon the success of the enterprise. About the first of August following, complainant refused to go further under the contract without pay; and from that time on he was in the employ of the companies, and under their pay, for what he did to accomplish the same general result contemplated by the contract.

J. Riley Bangs, of Paw Paw, at the time the contract was made, owned 75 shares of stock in the Paw Paw Railroad Company, which he purchased on the third day of April, 1884, of G. W. Longwell, who obtained it from the company in August, 1875. This is the stock now held by complainant. It nowhere appears that either of these owners objected to anything that was done, or which the company proposed to do, while they were stockholders.

On the sixth day of February, 1886, Bangs sold this stock to Thomas Welch. He lived in Paw Paw, and the Paw Paw Railroad Company had its office there. He held the stock during the entire period the complainant was in the employment of the two defendant companies, and, so far as appears, he knew of all the action and doings of both companies, and what was contemplated and desired by both; and it is claimed by the defendant answering that, knowing of the contemplated sale of the Paw Paw road to the Toledo & South Haven Railroad Company, he not only approved of it, but actually agreed to sell and transfer the said 75 shares of stock to the Paw Paw Company, or to those representing it, to aid in the accomplishment of the sale, at 40 per cent. of the par value; that the complainant knew of this, and that he was employed by the companies defendant to accomplish this object; that instead of doing this, however, in violation of the trust and confidence placed in him by his employers, knowing that these shares were the only outstanding stock not purchased in the interest of the company, to enable it to complete the sale to the Toledo & South Haven Company,

and with a view to compel the Paw Paw Company to pay more for the stock than it had to any of the other stockholders for their stock, he purchased of Welch, only the day before he had agreed to sell the same to the company, said stock, and, instead of taking the transfer of the same to or for the use of the company, took it directly to himself, and now holds the same, as defendant claims, in violation of the equitable rights of the defendant companies, and refuses to sell or to transfer the same to either of them for less than its par value.

It is true that many of these statements are denied by the complainant, but in the main I think they are borne out by the circumstances and testimony in the case, and for this reason the defendant claims the complainant asks unconscionable relief; that, while he asks equitable relief, he has violated good faith with both companies, and has failed and refused to do equity, and that his action and conduct have been such, in the premises, as to estop him from asking the remedy he now seeks; that to do so would be to seriously affect injuriously large public as well as private interests, obtained and now enjoyed in perfect good faith, and could subserve no good or equitable purpose, or protect any just rights of the complainant. And there is much ground for this contention of defendant, if the legal *status* of the defendant companies can be sustained.

On the first day of November, 1886, the Toledo & South Haven Railroad Company executed bonds of $1,000 each to the amount of $216,000. Said bonds are negotiable, and draw interest at the rate of 6 per cent. per annum, and the bonds are secured by a mortgage upon all the property of the company, which includes the Paw Paw railroad, running to the Farmers' Loan & Trust Company, which is made a defendant in the bill.

And the complainant's counsel, on the hearing in the court below, claimed that the relief complainant was entitled to, if

he prevailed, as against the defendants, was an injunction restraining defendants from negotiating said bonds until they should purchase the 75 shares of stock, and pay him such sum as the court might deem reasonable therefor.

It will be recollected that the consideration the Toledo & South Haven Railroad Company paid for the Paw Paw road was stock in the former road at par. The stock of the one was to be exchanged for the stock of the other.

In this Court the contention of the complainant is that the sale made by the Paw Paw Railroad Company to the South Haven Railroad Company was void for two reasons:

1. Such sale is only authorized by the statute of an uncompleted road, and complainant claims the Paw Paw railroad, at the time of the sale, was a completed road.

2. That the complainant was a stockholder in the road, and neither he nor Mr. Welch, of whom complainant purchased his stock, had any notice of the meeting of the stockholders at which the resolution was passed authorizing the sale of the road.

As already intimated, I have no doubt, upon the testimony, but that the Paw Paw railroad was uncompleted at the time the sale was authorized. It had neither station-houses, side tracks, nor turn-tables; neither had it any rolling stock that was fit for use, and it had leased what it used about as long as it could ; and I think it is quite clear, from the testimony, that the company was unable to complete its construction by furnishing what was necessary for its successful operation, and this is what I understand to be necessary for the completion of any railroad.

The section of the statute (How. Stat. § 3403) under which it is claimed the sale was authorized and made reads as follows:

"That it shall be lawful for any railroad company in this State which shall have entered in good faith upon the work of constructing its road, and shall have become unable to complete the construction of the same, or of any part thereof,

to sell and convey the whole, or any part, of its road so partially completed, together with the rights and franchises connected therewith, to any other railroad company or corporation of this State not having the same terminal points, and not being a competing line : *Provided,* that at any general or special meeting duly called for that purpose the stockholders carrying [owning] two-thirds of the stock of said company shall consent thereto: *And provided, further,* that the company or corporation so purchasing shall hold such property and franchises subject to all the obligations and duties, and with all the rights and privileges, prescribed by the general railroad law of this State."

The foregoing provision of the statute was sufficient to authorize the proper proceedings to make the sale of the Paw Paw railroad to the defendant, and there is no doubt but that the sale was authorized by the stockholders owning two-thirds of the stock.  The stock consisted of 750 shares, and the stockholders representing 675 of the 750 were present at the meeting at which the action was had, and voted for the resolution authorizing the sale, and the vote was unanimous.

This meeting was held after the Toledo & South Haven Railroad Company had made its purchase of the Lake Michigan division of said road, and a proposition had been made by the Toledo & South Haven Railroad Company to the Paw Paw Railroad Company to purchase its road.  The proposition, and the action taken upon it, appears by the following preamble and resolution, adopted by the stockholders when all were present but complainant, viz. :

" WHEREAS, the Toledo & South Haven Railroad Company has proposed to buy the franchises and property of this company, and to pay for the same in full-paid stock of that company, in amount equal to the outstanding stock of this company, on terms that this company will procure its stock to be transferred to that company, and exchange its stock therefor, dollar for dollar, with the present holders of the stock of this company; and it appearing to be for the manifest interest of this company to make such sale at that price and on those terms.

" Therefore, *resolved* by the stockholders of the Paw Paw

Railroad Company, all present concurring, that said proposition of the Toledo & South Haven Railroad Company be, and the same is hereby, accepted; and the directors of this company are hereby authorized and directed to consummate said sale without delay.''

This action seems to have been by a quorum of the stockholders, and places the further proceedings to consummate the sale in the hands of the directors, and which was finally completed by the execution of a proper conveyance of the Paw Paw railroad property to the Toledo & South Haven Railroad Company on the ninth day of September, 1886. The conveyance was made by the president and secretary of the company, under the following resolution passed by the board of directors of the Paw Paw Company, viz.:

" *Resolved*, By the directors of the Paw Paw Railroad Company that, in pursuance of the authorization of the stockholders of said company, the president and secretary are authorized and directed to sell, transfer, grant, convey, deliver, and assure to the Toledo & South Haven Railroad Company all the franchises and property of the Paw Paw Railroad Company, and to make, execute, acknowledge, and deliver all necessary and usual deeds, assignments, and transfers, under their hands and the seal of this company, to accomplish and complete such sale, with usual covenants, in consideration of the sum of $72,500 of the full-paid capital stock of the Toledo & South Haven Railroad Company, the same to be issued on demand to the present stockholders of this company, dollar for dollar, in exchange for the shares now held by them in this company, upon the transfer of such shares and delivery thereof to said Toledo & South Haven Railroad Company.''

These proceedings show a legal sale of the Paw Paw railroad to the Toledo & South Haven Railroad Company.

Under second ground, complainant contends that he had no notice of the meeting at the time the proposition for sale was commenced, and that none was given, as required by law; and that he was not present in person, nor represented by proxy, at such meeting; and that he in no way has consented to the action taken at that time. He, however, does not

aver that he would not have voted for such sale had he been present.

The fact appears that he purchased his 75 shares of stock, the day before the meeting, of Mr. Welch, who, as I think the testimony shows, had reason to know that the Paw Paw Company desired to make the sale, and had himself agreed to sell to the company said stock to enable it to make the sale, and he was honorably bound to carry out such agreement at the time he made the transfer of his stock to the complainant.

It is for the want of notice of this meeting that the complainant claims the sale is void, and upon this ground insists that it should be so decreed, to save his equitable rights.

In view of the relations the complainant had previously sustained to the two defendant companies, and of what must have been his knowledge of the object of the action they had taken in the premises, I think he should be regarded as holding subject to the equitable considerations growing out of the arrangement made by his vendor of the stock with the parties acting in the interest of the Paw Paw Company, and that the most that complainant could claim, under the circumstances, in equity and justice, against the company, would be what the defendant offered to pay him, stated in the answer to complainant's bill, viz.: the fair value of the 75 shares of stock at the time the Toledo & South Haven Company purchased the Paw Paw railroad. I can discover no fraud or any attempt to defraud the complainant on the part of the company answering the bill; but all the circumstances, I think, quite clearly show a want of good faith in the demands made by the complainant upon the Toledo & South Haven Railroad Company.

The complainant appears in a court of equity to seek and enforce what he conceives to be his equitable rights, and in so doing he must submit to do what is right and just; and in my judgment his counsel at the circuit, in submitting the

case to the learned circuit judge, was not far out of the way when he stated to the court the claim of his client should be satisfied with the payment of such amount as the stock he held was worth; and while he cannot be held to the mode of payment provided by the terms of purchase by the Toledo & South Haven Railroad Company, because of his consent never having been obtained thereto in any legal way, equity and justice require that he should transfer to said company his 75 shares of stock upon receiving or being tendered the value of the same, at the time the company made its purchase, in money; and we think it is not necessary to refer the case back to take further proofs as to the value of the stock, but will allow the amount at the sum of $3,500; or, in lieu thereof, the complainant shall be at liberty, if he shall elect so to do, to surrender the 75 shares to the Toledo & South Haven Railroad Company, and take the stock of that company for an equal amount.

The decree entered must be reversed, and a new decree made in this Court in accordance with this opinion, with costs to defendant in this Court. Neither party will recover costs as against the other at the circuit.

We do not deem it necessary to discuss the other ground relied on for affirmance by complainant's counsel.

The other Justices concurred.